Harlan Ash tang Co. My name is J.T. Morris. I'm counsel for plaintiff appellant Deanna J. Robinson. Your Honor, this case revolves around Ms. Robinson's well-pledged specific allegations that show a textbook First Amendment violation. You have a wonderful voice, but elevate it because there's a lot of people listening. Yes, Your Honor. This textbook First Amendment violation is this, that defendants, as government officials, banned and continue to ban Ms. Robinson from speaking in a public forum because defendants did not agree with Ms. Robinson's comment criticizing them for declaring that they were going to censor citizen speech in the same public forum from which they ultimately banned Ms. Robinson. Do we have to decide whether a Facebook page is a public forum? I believe we have to at least reach the question of whether the Facebook page is subject to First Amendment scrutiny. Even if it isn't a public forum, for example, if it's a non-public forum that's still subject to some First Amendment scrutiny, Ms. Robinson still deserves to go forward on her claims here because she's sufficiently shown a claim of viewpoint discrimination, which is prohibited by the First Amendment regardless of whether it's a public forum or a non-public forum, and she's also shown an ongoing categorical denial of access from speaking in that forum, which is unreasonable. So it passes even that lower level of First Amendment scrutiny. But I thought the magistrate and the district court never reached the First Amendment substantive free speech claims because they decided at the outset that the sheriff wasn't the policymaker and or if the statement on the Facebook page was not a pattern in practice and therefore never reached difficult First Amendment issues. Sure. Is that right or wrong? Well, the magistrate judge's findings and conclusions were limited to the denial of preliminary injunction, which is an error I will get to later. The district court's dismissal order did focus on whether or not Ms. Robinson showed a plausible claim of viewpoint discrimination. Because it erroneously found that she did not, it then dismissed all her other claims, including those for prospective relief and including her municipal liability. But the district court found she didn't for what specific reason? What's the issue that's been engaged below that you're alleging is error before us? Two, Your Honor, as to the dismissal order. The first is that the district court overlooked entirely Ms. Robinson's allegations of an ongoing prior restraint. It didn't even reach that issue, although she specifically pled it in her complaint and backed it up with specific allegations about a categorical ongoing ban for speaking in a public forum. The second error on the order of dismissal, Your Honor, is that the court erroneously found that Ms. Robinson's allegations did not sufficiently set forth viewpoint discrimination, either as to the individual defendants here or as to the county. Ms. Robinson's complaint shows one, and it specifically alleges that defendants deleted her negative comment from Facebook and banned her from the same because of the message it contained. But make it clear that the only question before us is the liability of the county. Individual defendant – the dismissal of individual defendants or defendants in their individual capacity from this case has not been appealed. We have not appealed dismissal of individual defendants as to damages. In other words, we're not appealing the district court's finding of qualified immunity. We are appealing the dismissal of prospective relief against the individual defendants. Do you have a record, Cypher, where your complaint alleged a request for injunctive relief against the individual defendants? If you look at count one of Ms. Robinson's complaint, it specifically lists all the individual defendants and specifically asks for injunctive and declaratory relief against them in that count. Well, that really is kind of a moot point in a sense. If there is a county policy and if the sheriff is responsible for the Facebook page, then we assume that his underlings will follow whatever kind of policy that is determined by him. That's correct, Your Honor, and we have appealed the denial of her claims as to the county, specifically because the district court, one, ignored the blanket written evidence on the Facebook page saying that the sheriff's office only wants positive comments. The reason, Your Honor, Ms. Robinson has appealed the dismissal of her individual claims for prospective relief is this. Because if the court remains and it gets to the merit stage and for some reason she's unable to prove a policy at the merit stage, but there's still a denial and a deprivation of her First and Fourteenth Amendment rights, she should still be eligible to get some prospective relief against the individual defendants in their individual capacities. Injunctive relief? Injunctive relief. All right. Now, what was your answer to Judge Higginson's question as to whether you properly alleged that and have appealed that? I believe we have properly alleged that, Your Honor. Admittedly, in the complaint it does say that Ms. Robinson has said the individual defendants is seeking damages against them in their individual capacity and prospective relief, by which I mean injunctive and declaratory judgment relief, against them in their official capacity. As this court made clear in Parker v. Braves, pleading capacity is relevant only to issues of the court's jurisdiction. There's no governmental immunity or sovereign immunity issues here. So our argument is that just because Ms. Robinson had an imperfect legal theory, because she made that one capacity distinction, that when you read the rest of her allegations, specifically when you read count one, and she specifically asks and lists every individual defendant in there and asks for declaratory and injunctive relief as to those individual defendants, that she's done enough. All right. Now, on briefing before us, have you supported the argument that you're making now in your complaint in your briefing? We have, both in our merits brief and our reply brief, Your Honor. With respect to the liability of the injunctive relief you were claiming against these individuals? Injunctive and declaratory judgment relief, Your Honor. You've made that clear and plain in your briefing? We do, and we cite Parker v. Braves for the premise that you only need a plea capacity as it relates to subject matter jurisdiction, and that what the court's obligation is to go through the allegations in whole to determine the nature of the pleadings. And we also explain a little bit about sort of the gap when it comes to prospective relief as to individual local government defendants, because, again, as I explained, if you can't prove a policy at the merit stage but there's still a deprivation of those rights, there should be some remedy available, at least an injunctive or declaratory relief, against those individual defendants in their individual capacity. This is what the Eastern District judge did in the Davison case, where he actually issued a declaratory judgment against the county official there who had banned for a short time the plaintiff in that case and did so in an individual capacity. That illustrates the importance. But law enforcement and schools all over the country, these public entities are putting up Facebook pages, which the public and students have access to. Is there no developed circuit law yet as to whether those are public forum? As to the specific question of social media controlled by the government, there is not. It is this circuit and it is the Second and Fourth Circuit that are also considering similar appeals at the moment. They're all pending now? Yes, Your Honor. Okay. So it would seem like the focus would be to establish who is the policymaker first and then is there a policy. And at this dismissal stage, you just have to make a plausible argument, and they contest that you don't. Do you want to turn to those two points? Sure, Your Honor. As to the municipal policy, the municipal claim against Hunt County, I think the applicable case here that's really applicable is Grote v. Dennis, which says you have to show an official policy that is fairly attributable, either that was ratified or set forth by an official policymaker. You just have to show a nexus. So here what we have is Ms. Robinson has shown multiple instances in her complaint of viewpoint discrimination, that defendants deleted her comment, four other comments that were negative on the same Facebook comment thread, and as the Supreme Court makes clear, it's axiomatic that you cannot restrict speech based on the message. She's also pointed out in her complaint and attached exhibits to her complaint showing that on the Facebook page it states, we welcome positive in large capital letters comments. In the January 18th post as well, she's alleged that's pretext because it says we don't want inappropriate or insensitive comments here. Well, that's pretext for viewpoint discrimination. This report overlooked both of those, and particularly I would point to the barefaced request and really coaxing of citizens to post only positive comments. This is like Grodin in this sense. In Grodin, the court found that the plaintiff there sufficiently alleged an official policy that passed the 12b6 stage because he said there was an official policy of the city of Dallas that was discriminating against street vendors for what they said, and he pointed to a statement by a city representative that was consistent with the alleged policy. Here, Ms. Robinson has pled with specific allegations of a policy of viewpoint discrimination intended to shape discourse. So you're saying the government or a school can't say we only want positives about us and then delete the negatives? Or are you saying more broadly the government and the school cannot say we will take out inappropriate speech? Are you saying both? As to your first point, Your Honor, absolutely they cannot say we want only positive comments because once they open a forum to general public participation, as defendants did here, saying you only want positive comments is viewpoint discrimination. What about the second where they say we're going to try to delete things that are inappropriate? So if it's profanity or the N-word, can the government delete those or do they have to let them stand? Well, let me make a distinction first, Your Honor. I think that does depend slightly on who the government actors are and what the purpose of the forum is. Here where we have a sheriff's office, that's not a school, that has opened the forum to present matters of local public interest. That's what it says on the Facebook page. They have invited the public to comment on political matters. And so if they are going to make distinctions of speech in that forum, they must be objective, they must be content, or if it's a limited public forum, viewpoint neutral, and they have to be definite. But your client made what? The most offensive one is something about she hopes terrorist cop pigs will get killed? Not even to that level. What was it? She referred to a cop that had been killed the day prior as a terrorist pig. And then she referred to the Hunt County Sheriff's Office as idiots led by the biggest bunch of idiots sheriff meets. Well, in a forum open to political speech without any definite and objective criteria, that's protected speech. I mean, we could go through Supreme Court case after Supreme Court case. You're saying they had no authority under the Constitution to preclude their being called terrorist pigs? Given the scope of the forum, no, they did not have that authority. Had they limited the scope of the forum to say this forum is to present matters of the police and educate children, perhaps they'd get more leeway. Had they limited the scope of the forum to presenting matters about local weather and traffic? But you're saying they can't limit, they can't reasonably limit the forum, you're saying? They can, if it's a limited public forum, they can impose reasonable restrictions that are reasonable to the purpose of the forum. But here again, we're talking about political poor speech. She is criticizing defendants for saying, and responding directly to defendants, for saying that we are going to remove inappropriate comments and hate speech on here. Well, but hate speech, I mean, calling the police terrorist pigs seems like it may be hate speech. But the problem with hate speech, Your Honor, is that's not a category or a criteria the First Amendment allows a government to impose, particularly in a forum as broadly defined as this. It's vague. It's subjective. It allows a government official to make an arbitrary judgment about what is hate speech and what isn't. These cases are all murky with social media. Do you have a thought on the future? If your arguments prevail, what's to stop schools and law enforcement from just having no Facebook pages? I understand that concern, Your Honor. And to be clear, Ms. Robinson is not saying that the government doesn't have an interest in maintaining a Facebook page. As the Supreme Court recognized in Packingham, these social media networks that are run by the government present an opportunity for constituents and their officials to have good discourse, and they're important for that. And certainly the government has an interest in maintaining order and maintaining some sense of decor. But they have to do so with definite and objective criteria. Here that wasn't the case. It just said if we find subjectively as government officials find your speech to be inappropriate or hate speech, we're going to delete it. That allows the government to engage in viewpoint discrimination. Primarily their brief is saying, well, that wasn't the sheriff's policy. He didn't ratify whoever it was at the low level that was putting up the guidelines. So when you cite Grodin, Grodin is a spokesperson out there. This is our policy. Why isn't the magistrate of the district court correct here that we can't attribute this to Sheriff Meeks and he is the one that is the final decision maker? First, I'm not sure the district court ever reached that stage. They just simply said that because there were negative comments left on the thread, it was it wasn't enough to show a policy, which we obviously disagree with. And you disagree with that with citation to what case is the one where a single statement can be a policy? I would I don't have a particular case that says that, but I would point to Rosenberger, where it says it's axiomatic. The government cannot suppress speech based on the message. So once the government doesn't like the message that is made in a public forum, that's enough. And as to go back to your first point, your honor, the sheriff here has plenary plenary final policymaking authority in the county. The law is clear that in exercising that policymaking authority, he can take steps that further his goals and objectives of setting final policy for law enforcement. Here we have a Facebook page that tells people to call 911, says we're going to post mugshots of criminals. They do post mugshots of criminals. They post missing persons reports, as Miss Robinson has alleged. So having that sort of Facebook page is in line with the sheriff's goals and objectives and fairly attributable to his final policymaking authority over law enforcement in Hunt County. And again, here we have at least an employee. And as Miss Robinson has alleged that Mr. Meek's approved this page, we have an employee, at least, who said on this page, we want positive and capital letters, comments only that statement. The evidence of Facebook of viewpoint discrimination is fairly attributable to the sheriff as final policymaker for a law enforcement social media page in Hunt County. On the page, is there any reference to him on the about section? Or is there a reference anywhere to the commissioner's court? No, there is not. No to the latter, but yes to the former. I don't believe there is either a reference directly to Sheriff Meek's or directly to the commissioner's court, but it is deemed the Hunt, the official. This is the official Facebook page of the Hunt County Sheriff's Office. Fairly attributable, if it's official, fairly attributable to the man in charge, who is Sheriff Meek's, and who is the final policymaker in terms of setting law enforcement goals in the county. What did you say the two other circuits are that are considering this? The Fourth Circuit, Your Honor, in the Loudoun County v. Davidson cases, I believe they had oral arguments at the end of September and have not released an opinion yet. The other circuit is the Second Circuit, and that is in the Trump v. Knight Institute, the President Trump's Twitter feed case. A briefing is complete, but I don't believe they have had an oral argument yet. Thank you. Your Honor, I just want to return – I see my time is up. I am sorry, and I will step away from the podium. Thank you. I please the court, Tom Brandt for Hunt County, Texas, Sheriff Randy Meeks, Jeffrey Haines, Destiny Tweedy, and Jacob Smith. The court should affirm the district court's orders and final judgment and should reject the new and miraculous arguments that the appellants present for the first time in their reply brief. I want to make three – focus the court's attention on three matters, the motion to dismiss and the Monell issues that pertain to that, the motion for preliminary injunction, the Monell issues, and the evidence there. And then finally, the new arguments, which I consider to be waived, that have been brought to the court's attention in the reply brief. I would like to address the Monell issues with the motion to dismiss, because I think the court is focused on that. In a certain sense, what we have here is two parties talking and arguing past one another. The question regarding whether we should be talking about the constitutional issues at all is a good question. The doctrine of constitutional avoidance applies resoundingly here, because what you have is a Monell issue, a policy-customer practice issue here. And there are some very interesting constitutional questions, but this case can be decided clearly on the Monell issues. But if we decide on Monell and hold that the district court erred in that respect, then the constitutional issues become alive, don't they? Yes. But the reason we don't need to meet those issues is because it's my position that the Monell issues determine the decision. Yes, Your Honor. Well, it was just the same inquiry as Judge Jolly. So, therefore, if we decide Sheriff Meeks is the final decision-maker and we decide there was a policy here as to positives and inappropriate posts, you would say we shouldn't go further, we should remand so that the First Amendment free speech issues get addressed in the first instance? I don't mean to be picky, but you used the word decision-maker, final decision-maker, in your question. And that is – there's an important distinction. If he's the policy-maker, then the answer to my question is yes, it would be remanded or we should address them ourselves? It should be remanded. It shouldn't be addressed here. Okay. So go ahead with your argument. I want to focus for a minute on the decision-making, policy-making, because it's a very important distinction in this case, and this Court has always recognized that to be an important distinction. The sheriff – as you described, there were low-level people administering this page. It was called the sheriff's page. There was no involvement of the county commissioner's court whatsoever, nor was there any plague. So there's no pleadings to support, there's no well-pleaded facts before the court in the record that would connect the county commissioner's court to a social media policy that would have caused anything to happen in this Facebook situation. Okay, we're granted that, but then you have the fairly extensive law in Texas that the sheriff is a policy-maker. Yes, you do, Your Honor. The sheriff is – and exactly in the Monell analysis under Protnick, you look to the state law to determine who the policy-makers are. And so it is well-established that the sheriff is the policy-maker for law enforcement. He's the policy-maker for the jail. So no matter what the county commissioner's court is doing over here with respect to the jail or whatever they feel like, the policy-maker is going to be the sheriff. So that I can't stand up in front of you and try to – I understand that, but it seems to me that the Facebook that tries to reach out and get support for what the sheriff is doing in the area of law enforcement is clearly within that perimeter of his authority. Your Honor, it is within his discretion to do this, but it is not within the state law authority granted to him for the policies, because if that were the case, you would have short-circuited all of the Monell analysis that would say no matter what the sheriff does, if he's operating in the area that he has delegated under state law as the final policy-maker – not decision-maker, but final policy-maker – then the county buys the liability for whatever that final policy-maker does in that area. But there's no clear direction. There's been none cited to the court from the plaintiff about any case law, any statutory authority, or anything that would say that it was the sheriff who was the final policy-maker in this area of social media. But if the sheriff decided to put out advertisements or information to the public and signs around the community, the sheriff's office is available to everybody. We want everybody to know that you can come to the sheriff's office if you have any kind of problems in the community relating to law enforcement. Would that be within the sheriff's law enforcement duties to inform the public about the services that he was offering? Your Honor, in that situation, I'm thinking it's more along the lines of the First Amendment rights of the sheriff to speak. In certain senses, the political advertisements that says, vote for me, I'm coming up for re-election, that sort of thing. So that's what it sort of sounds like to me. It is not the nature of what he does once he gets into office. What you're talking about is the promotion of the sheriff's services. No, I'm talking about the sheriff is in office, but he is trying to communicate with the community whether he does it on the radio, whether he does it on Facebook, the kind of services that we provide the public and how we're trying to implement those policies to protect the public generally. Yes, and that's information that's being put out, and that's the nature of what the Facebook page is. It's an informational social media page. It's interesting to note that for the first time, one of the arguments that they raised for the first time in the reply brief is that they say for the first time that this is a law enforcement purpose that's going on. That has never been before this court. It's not properly before the court. How could it not be? How could it not be? The sheriff – we've said in Turner that what the sheriff does is he engages with the public, informs them of his achievements, and has – goes to a public forum and says, this is what I'm – what are your concerns about crime? Have you seen any on the street? And that's exactly what this page is doing. He says this is the official sheriff page. Let's get the interaction that I would if I had time to walk out to every single school. How is that not law enforcement? He's promoting and inquiring about law enforcement. But, Your Honor, that issue was never raised before the district court. It wasn't raised in the opening brief by the appellant. But they've said they cite the about portion. The sheriff has said, this is why I'm opening up a Facebook page. It's so you know about us and we know about you. How is that conceivably not law enforcement? It isn't as if the sheriff is just on a frolicking detour. Your Honor, there's no law, there's no statute, there's no case law that says that this area of policy, as it were, is within the sheriff's final policymaking. He has final decisionmaking authority to say he wants to have a Facebook page. But that doesn't tie the county commissioner's court to what he's doing. It doesn't have, it's not, and they've sued the county. And I want to address something else. They've sued the individuals and Your Honor's asked them questions about this earlier. There is nothing before this court with regard to the individuals being sued for declaratory injunctive relief. That ship sailed long ago, first of all, in their own pleadings. That's a separate issue. I'd like you to stick with your contention that the Facebook page has no connection to law enforcement, yet the sheriff's office put it up as a law enforcement tool. I don't understand that point. I understand your question. I'm not saying it has no connection. Everything is connected to everything in some sense. But what you're talking about here is what are the functions that the sheriff has under state law that would make the sheriff the final policymaker? Well, state law. I understand. I think we've worked that pretty good. The other thing that I was wanting to ask you about, you seem to suggest that the sheriff was not the decisionmaker. That is, that he didn't make the decision that our issue in this case. Is that part of your argument? If we say he is a policymaker, does that end it? Or are you saying, no, that doesn't end it because he was not the decisionmaker that caused the alleged constitutional violation here? Very good question. Because we're talking about decisionmakers on two different levels. First is the boots on the ground issue. What happened here? Who allegedly deleted these remarks? Who decided to take them off? And honestly, under the Loudoun County case, we have evidence that Facebook itself deletes these comments. All of the people involved who were actually administering the Facebook page says, I didn't delete that. I didn't block that. And the sheriff, before the lawsuit was filed, so he had no involvement in actually deleting it. Who put it on there? I mean, who – they put it on there. Then what, did the sheriff then block for all? No, the sheriff never participated in any of the alleged blocking or deleting. What the sheriff did before the lawsuit was filed was he got wind that there was a complaint about deleting and blocking and said, and this is clearly on the record, and said no deleting, no blocking. That was his decision. So if you want to call that – he had no decision in the first place. It's like saying here's a deputy out there arresting somebody. The sheriff didn't have any participation in that decision to arrest. But he is saying don't arrest people without probable cause. Let me get it in my mind now because the only First Amendment violation that we have here is the deleting and blocking, right? Yes. That's it. I mean, they didn't in any other way suppress the speech of the plaintiff here. I have no other way. The deleting and the blocking. So that's the question whether the sheriff deleted and blocked. And there's no pleading at all to connect the sheriff to the deleting or the blocking. The only connection that they say is the about page. Well, no, but the January statement, right? If the Facebook page is saying only positives as a statement, that's a policy that he's ratified because it's right there as the entire purpose behind the page. Yes, but that says nothing about deleting or blocking. That's a suggestion saying we want – But all she has to do at this stage is allege that she's still blocked. It's still prior restraint. She claims that she's not allowed to post. She claims that, and we are baffled by that claim. Well, you're baffled because it was dismissed. So we have to – we can't resolve that. You agree. Right, but we also don't – and it goes into the injunction – we don't know who deleted those remarks and who blocked because we've gone back and say – The sheriff, when he filed out, before the lawsuit filed, he said unblock everybody. Don't delete anything. So – But we can't say there's no case in controversy when she's saying she's still blocked. Right. I understand that. All of this amounts to is we find there's a policy, and then we remand for all these decisions that we're talking about now. Well, there's not a – there's no authority before the court that's been presented to say that the sheriff would be the final policymaker of the social media policy for the county. Okay, tell me who is. It would be the county commissioner's court, and the county commissioner's court doesn't have a Facebook page. They have a website, something that doesn't have the comments and the deletions that occur. And then we get back to the argument that we've already pretty well discussed, and that is whether this is part of law enforcement or not. So that's – we're going circular here now, it seems to me. Well, that's certainly possible, but I do want to mention – But on that point, your contention is the county commission court controls the sheriff's Facebook page? No. The county commissioner's court – it's like in the Bolton decision out of Dallas. In that decision, the city manager was the final decision maker and fired the police chief. Yeah, and under the charter he had no authority to do it. Right? They had no – he had final decision making, and to the extent that he would – the extent that he arguably violated the charter, then it wasn't a policy that caused – the city's policy didn't cause that firing. And same with here. The county – and remember, you're talking about the nature of county – the structure of county government in Texas. It's a very decentralized structure, and then you have to understand that these are separate elected officials. So then you have to ferret through and parse through what is the state law in Texas regarding the various fiefdoms, as it were. I thought Texas law was really clear. Sheriffs run law enforcement. They do. And so – But there's nothing at all clear about sheriffs running social media pages. All right. What's the argument – even if there is a policymaker – We've done that argument. So what's the – are you also contending there's no pattern? That is part of law enforcement. That's all we – we've been over that all too much already probably. All right. Then I think we've talked about the limited nature of the appeal. All the qualified immunity is gone. All the individuals are gone. The damages are gone. And I wanted to go back to this issue that you brought up earlier with regard to the declaratory injunctive relief against the individuals in their individual capacity because that has also been waived, and it can't be brought up now. I don't know about declaratory relief. That's separate and apart from the injunctive relief. Well, Your Honor, with respect to that, it has been affirmatively waived by the plaintiff – by the appellant. And first of all, in her complaint, she says repeatedly – and she says as to each individual defendant. First she starts with Meeks and then she runs down. She says, Defendant Meeks is being sued in his individual capacity as to monetary damages and in his official capacity as to injunctive and declaratory relief. That's what they say. Now, then they go back, and in their response to the motion to dismiss, saying, oh, we're only going after them for declaratory and injunctive relief in their official capacity, which pulls it back to the policy-customs-practice arguments. So they have waived that issue. They can't now all of a sudden say, oops, I know we put that in our complaint, and I know we doubled down on that in the response to the motion to dismiss, but we'd like to change our mind now, and we'd like to bring back these people into the lawsuit when they've been properly dismissed. But, I mean, it all amounts really pretty much, perhaps, to the fact of whether there's a policy that holds the municipality, and that is the county, in the case. And it does. I mean, declaratory relief is very much alive. Well, there is a distinction the court made, district court made, saying that declaratory relief, if it adds nothing, is not going to be allowed, and made that decision based on that. So it wouldn't be necessarily the case that in a remand situation, the declaratory relief is as well. Well, I mean, for instance, if you got back and you found that because there is this issue of mootness in here, it would probably be remanded to the district court as well if we get by the holding of the district court with respect to policy. And if the injunctive relief is moot, then the declaratory relief becomes much more important to declare what is and is not subject to the First Amendment on the Facebook page. Perhaps so, but with declaring as to whom, official capacity claims or individual capacity claims? And what I'm saying, my point is that those individual capacity claims are gone. Okay. But still, the declaratory relief may ultimately be applicable with respect to the sheriff if we determine that he is the policymaker. Perhaps, but not as to him individually. It could only be as to him in his official capacity. Right. I do want to mention in the waning moments, of course, on the injunction the court can affirm on any basis supporting the record, and there is plenty of basis to support it. I also wanted to mention on the case that Mr. Morris mentioned to you, and that's the Davis v. Loudoun County case. That is it. That is the only case that we have. There's the Twitter case with President Trump. But with this one, it's the one that's very close to our situation where Loudoun County was saying, we didn't delete anything. They went through a lot of discovery. Finally, they took the deposition, and they got Facebook to admit, yeah, we were the ones who were deleting all. It's not a surprise to learn that Facebook is deleting things off of Facebook pages because they tell you that at the get-go. This is our platform. It's not your platform. It's not the government's platform. It's our private sector platform, and we control it. But that would depend on an inference because in this case I thought the allegation was that some offensive statements were left up. That if you assume it's neutral Facebook doing it, a statement like, well, what is the one that was left up? If you kill a lawman, we will kill you back. How would that be different? That one conveniently gets left up, but the one about the opposite? That doesn't sound like Facebook imposing their policy. I don't represent Facebook. I don't know what they do, but I do know this, that if we're saying – if they're saying there's a policy that we're viewpoint discrimination, then what you're talking about right now is away – completely away from that policy. No, that's positive for law enforcement. You kill one of us, we'll kill you. But the negative, we hope you die, those get deleted. Not all negative comments got deleted. That's in the record. The record reflected – my time is up. The record reflected and the district court recognized that there were negative comments that were left on, and that was part of the court's analysis of saying there wasn't a policy customer practice because it's obviously – it's being allowed. Thank you, sir. Mr. Bogan. I'm sorry, not Bogan. Mars. Your Honor, I'm going to run over my time a little bit with the court's permission. I just have a few rebuttal points. Sure. Thank you, Your Honor. First, Mr. Robinson did not waive the sheriff as official policymaker because of his law enforcement policymaking capacity. Specifically, on record, page 618, which is her opposition to the motion to dismiss, she states, simple reason dictates that defendant meets having plenary final policymaking authority over his department as a matter of state law, had and maintains final policymaking authority over the self-styled official Facebook page for his department. There was no waiver, Your Honors. Second, again, going back to the injunctive and declaratory relief against the individual defendants, I just remind the court this is a de novo review. Again, Mr. Robinson points to Parker v. Graves and suggests that a technicality should not prevent her from moving forward with her claims against the individual defendants for prospective relief. Finally, Your Honors, the court should reject defendant's reliance on the first Davison case where they found that Facebook removed the comments. There are so many distinctions in that case and this one. First, the plaintiff and the defendants there had the benefit of discovery. We don't have that here. The court's under an obligation to accept Ms. Robinson's allegations as true to the extent that they're well pled. And second, there was no blocking in that case. It was simply removal of comments. Here we have Ms. Robinson clearly alleged she remains blocked from commenting on Facebook. 30 seconds left. His primary argument, which we spent almost all our time talking about, was that the sheriff isn't the final policymaker. So I'd love 20 seconds of response to that. I think we go back to the Turner case, Your Honor, where this court has reiterated time and time again the sheriff has the ability to take action in furtherance of his goals for law enforcement. And those actions can be said to be the final policymaking actions attributable to the sheriff as his role as a final policymaker. I thank the court for their time this morning. Thank you.